## Case No. 9,061.

### MARCH v. HEATON et al.

[1 Lowell. 278; [1] 2 N. B. R. 180 (Quarto, 66).]

District Court, D. Massachusetts. Oct., 1868.

BANKRUPTCY — DETERIORATING STOCK — SALE BY MARSHAL—PURCHASE BY BANKRUPT—PRICE.

1. A voluntary bankrupt is entrusted with the care of his estate before an assignee is chosen, as a sort of trustee. He has no right to buy of the marshal the stock of goods which the court has ordered to be sold as likely to deteriorate.

[Cited in Lansing v. Manton, Case No. 8,077; Re Jessup, 19 Fed. 95.]

[Cited in Williams v. Merritt, 103 Mass. 187.]

2. Such a sale will be set aside on complaint by the assignee without proof that the price was inadequate, or that there was any fraud in fact intended.

Bill in equity [by George N. March against Samuel W. Heaton and Hubbard] to set aside the sale of a stock of goods. The bankrupts applied for the benefit of the act in the month of August, and there was some delay in the appointment of an assignee. In the mean time certain creditors petitioned the court to order the stock of goods to be sold, on the ground that they were liable to deteriorate and depreciate. An order was passed authorizing the marshal to sell the goods at a price to be ascertained by the appraisement of three disinterested persons. The marshal made sale of the goods at the precise sum at which they were valued, though he was told that another purchaser would give more. They were bought by Heaton, one of the bankrupts, for the account of a friend of his, one Hubbard of Pittsburg; and Heaton had ever since remained in possession of the goods as agent of Hubbard, and was selling them out in the usual course of business. The bill alleged fraud in the appraisement and in the purchase. A hearing was had on the application for a preliminary injunction.

B. F. Brooks and G. Z. Adams, for complainants.

A. W. Boardman, for defendants.

LOWELL, District Judge. In the view I take of this case it will not be necessary to consider the affidavits bearing upon fraud in fact, though I ought to say that I do not find that the bankrupt Heaton, or any one else, intended any wrong. Still I cannot but see that Heaton misunderstood entirely his position and duties. The statute has seen fit to entrust the bankrupt himself in voluntary cases with the care and custody of his estate until an assignee is appointed. It guards the rights of creditors by making it a crime punishable by imprisonment, with or without hard labor as the court may adjudge, for the bankrupt to withhold any property from his assignee, or to destroy or mutilate any book, deed, or writing relating

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

thereto; and by refusing his discharge if he shall be negligent in the care and custody of his estate and in delivering it to his assignee. All this may be said to be, and doubtless is, less efficient than the simple rule which obtains in proceedings in invitum, giving the marshal as messenger custody of these effects from the moment of adjudication. There appears to be no solid reason for this difference, unless we can safely assume that all voluntary bankrupts are to be trusted with property in which they no longer have any personal interest.

Be this as it may, voluntary bankrupts are bound to take every care of their assets for the benefit of their creditors. They are the assignees until the creditors have chosen others; and I hold it to be as illegal for a bankrupt to purchase his own stock in trade before he has an assignee to deal with, as it would be for the assignee to do so afterwards. Now, in this case, it seems to be made out by the evidence that the petition to sell and all the proceedings were arranged by and for the benefit of Mr. Heaton. It was he who discovered the importance of an immediate sale and pressed it to a conclusion, and became the purchaser for a friend who was willing to advance him the money. I must assume him to be the owner subject to repayment of his friend's advances.

The careful and experienced deputy of the marshal misunderstood my order, which, of course, intended the appraisement to establish a minimum and not a maximum price; and the defendants, by means of this mistake, may probably have got the goods for somewhat less than another purchaser was willing to give. But I do not rely upon that. My judgment is placed upon the simple ground that the bankrupt had no right to buy, and that the assignee has a right to overrule the sale. Whether he will succeed in getting more for the goods is no part of the question for me; that was for him to consider before he brought his bill. I shall not enter upon that inquiry. Injunction ordered.